# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

JEFFERY G. BRASUELL                                                                            PETITIONER

v.                              NO. 5:16-cv-00117 DPM-PSH

WENDY KELLEY, Director of the                                                          RESPONDENT
Arkansas Department of Correction

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

FINDINGS AND RECOMMENDATION

I. STATE COURT PROCEEDINGS. On October 23, 2010, petitioner Jeffery G. Brasuell ("Brasuell") signed a document entitled "Notification of Restriction from Property." See Brasuell v. State, 2015 Ark.App. 559, 472 S.W.3d 499, 502 (2015). The document provided, in part, that he was "no longer allowed on Wal-Mart property or in any area subject to Wal-Mart's control" until such time as Wal-Mart rescinded the ban. See Id.

On December 5, 2013, Brasuell entered a Wal-Mart store in Van Buren, Arkansas. See Brasuell v. State, 472 S.W.3d at 501. Jonathan Murphy ("Murphy"), a Wal-Mart asset-protection employee, observed surveillance video from that day, and it revealed the following: "a man (later identified as Brasuell) going into the store, buying two items, leaving the store, returning, concealing an air filter in his pants, and leaving the store without paying for the air filter and a container of oil." See Id. Murphy recorded the license plate number of the automobile being driven by the man seen in the surveillance video, and the incident was reported to the police. See Id. Using that information, the police were led to Brasuell. See Id.

Brasuell was charged with, and tried for, commercial burglary and theft of property. During the trial, Joseph Cole ("Cole"), an asset-protection manager at the Van Buren, Arkansas, Wal-Mart store, was allowed to testify that "on October 10, 12, 25, and November 11, 2014, surveillance video showed Brasuell shoplifting." See Brasuell v. State, 472 S.W.3d at 501. Cole's testimony regarding the November 11, 2014, shoplifting

incident was corroborated by the testimony of Nathan Jones, a Wal-Mart employee who testified that he saw Brasuell leaving the store without paying for merchandise. See Id. A Crawford County, Arkansas, Circuit Court jury convicted Brasuell of commercial burglary and theft of property and sentenced him as an habitual offender to the custody of respondent Wendy Kelley ("Kelley").

Brasuell appealed his commercial burglary conviction and advanced two grounds for reversal.[1] First, he maintained that the evidence was insufficient to support his conviction. It was his position that there was "a lack of substantial evidence … he had been in Wal-Mart unlawfully." See Brasuell v. State, 472 S.W.3d at 502. Second, Brasuell maintained that the trial court erred when it allowed Cole to testify pursuant to Arkansas Rule of Evidence 404(b) regarding the four shoplifting incidents subsequent to the December 5, 2013, incident. See Id. at 503. It was Brasuell's position that the subsequent bad acts were not relevant to issues of preparation, plan, motive, or knowledge of the December 5, 2013, incident, and the evidence of his subsequent bad acts should have been excluded. The Arkansas Court of Appeals found no reversible error and affirmed his commercial burglary conviction.

Brasuell had an opportunity to collaterally attack his convictions by filing a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. He never took advantage of that opportunity.

---

[1] Brasuell did not appeal his theft of property conviction.

II. <u>FEDERAL COURT PROCEEDINGS</u>. Brasuell commenced the case at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254 and joining Kelley. In the petition, Brasuell maintained that his convictions should be set aside and offered what appear to be four reasons why:

(1) his sentence is illegal because he "only committed [the] crime of shoplifting or theft of property but was charged with commercial burglary," <u>see</u> Document 2 at CM/ECF 4;

(2) his attorneys labored under a conflict of interest because his trial attorney, Ryan Norris, simply "handed off [the] case" to Lisa-Marie Norris on appeal, <u>see</u> Document 2 at CM/ECF 5;

(3) the state trial court "used video of crimes that [Brasuell] had not been convicted of at jury trial," <u>see</u> Document 2 at CM/ECF 6; and

(4) "[p]rior bad acts-character of defendant; did not enter Wal-Mart for [the] purpose of committing [a] crime," <u>see</u> Document 2 at CM/ECF 6.

Kelley filed a response to Brasuell's petition and maintained that the petition should be dismissed. It was Kelley's position that the petition should be dismissed because the claims contained in it were adjudicated on the merits by the state courts of Arkansas and are due deference, are procedurally barred from federal court review, are not cognizable, or are otherwise without merit.

Brasuell was accorded an opportunity to file a reply to Kelley's response. Brasuell did not take advantage of that opportunity.

III. BRASUELL'S FIRST CLAIM. Brasuell first maintains that his sentence is illegal because he "only committed [the] crime of shoplifting or theft of property but was charged with commercial burglary." See Document 2 at CM/ECF 4. Kelley construes the claim to be a challenge to the sufficiency of the evidence supporting Brasuell's conviction of commercial burglary, noting that he maintains there is no evidence he unlawfully entered the Wal-Mart store on December 5, 2013. Kelley's construction of the claim is reasonable, and the Court will construe it likewise.

"Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See Garrison v. Burt, 637 F.3d 849, 854 (8th Cir. 2011) (emphasis in original) [quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)]. If, in addressing such a claim, the state appellate court made findings of fact, they are accorded deference. See 28 U.S.C. 2254(d).[2] Additionally, a state appellate court's conclusion will not be disturbed unless it was "both incorrect and unreasonable." See Garrison v. Burt, 637 F.3d at 855 [quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010)].

---

2

28 U.S.C. 2254(d) provides that a petition for writ of habeas corpus shall not be granted "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Brasuell was charged, in part, with commercial burglary in violation of Ark. Code Ann. 5-39-201. A person commits that offense if he "enters or remains unlawfully in a commercial occupiable structure of another person with the purpose of committing in the commercial occupiable structure any offense punishable by imprisonment." See Ark. Code Ann. 5-39-201(b)(1). The phrase "enter or remain unlawfully" is defined as entering or remaining "in or upon premises when not licensed or privileged to enter or remain in or upon the premises." See Ark. Code Ann. 5-39-101(2)(A).

The state Court of Appeals summarized the evidence of Brasuell's guilt in affirming his commercial burglary conviction. See Brasuell v. State, 472 S.W.3d at 501-503. It is not necessary to repeat the summary, save to note the following facts. Surveillance video from the Van Buren, Arkansas, Wal-Mart store showed a man later identified as Brasuell taking property from the store without paying for it. See Document 13, Exhibit 3 at CM/ECF 152-165. He was in the store despite having signed the "Notification of Restriction from Property." See Document 13, Exhibit 3 at CM/ECF 166-170. Brasuell did not testify at trial and offered no evidence during the guilt phase of the trial. See Document 13, Exhibit 3 at CM/ECF 225-229. His defense was that he had simply shoplifted merchandise from Wal-Mart. The jury rejected the defense and convicted him of, inter alia, commercial burglary. Brasuell maintained on appeal that Wal-Mart had rescinded the ban when it allowed him to enter its stores on numerous occasions after he had signed the "Notification of Restriction from Property." The state Court of Appeals rejected that contention, finding the following:

> … There is no evidence on this record that Wal-Mart rescinded the ban on Brasuell. And simply because [he] was able to enter the store and buy things is not evidence that Wal-Mart rescinded the ban. Murphy testified that Wal-Mart cannot track every person who has been banned from Wal-Mart. He said that Wal-Mart does not train its employees to look out for those banned from stores. However, he added that Wal-Mart can–and did in this case-file charges against those who have been banned from the store by reviewing surveillance video and credit-and debit-card information. Because there is no evidence that Wal-Mart expressly or implied rescinded the notification banning Brasuell from its property, we hold that there was substantial evidence to demonstrate that Brasuell entered or remained unlawfully on Wal-Mart property and affirm the commercial burglary conviction.

See Id. at 502-503.

Brasuell has not shown that the state Court of Appeals' adjudication of his challenge to the sufficiency of the evidence resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Although the appellate court did not specifically cite federal law, its failure to do so is not problematic for two reasons. First, the substantial evidence standard used by the appellate court is not inconsistent with Jackson v. Virginia, 443 U.S. 307 (1979). See Dansby v. Norris, 682 F.3d 711, 717-718 (8th Cir. 2012) [reversed on other grounds, Dansby v. Hobbs, — U.S. —, 133 S.Ct. 2767, 186 L.Ed.2d 215 (2013)].[3] Second, neither the appellate court's reasoning nor result contradict federal law.

---

[3] The state Court of Appeals noted that "[t]he test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. … Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. … On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict …" See Brasuell v. State, 472 S.W.3d at 501-502.

Brasuell has also not shown that the state Court of Appeals' adjudication of his challenge to the sufficiency of the evidence resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of commercial burglary beyond a reasonable doubt. Brasuell was inside the Van Buren, Arkansas, Wal-Mart on December 5, 2013, in violation of the "Notification of Restriction from Property, and he took merchandise without paying for it. His defense that he simply shoplifted and never planned to steal anything was a question for the jury. It rejected the defense and could properly do so given the evidence presented at trial. The appellate court could properly reject his contention that Wal-Mart had rescinded the ban when it allowed him to enter its stores on numerous occasions and purchase merchandise. As the appellate court noted, Wal-Mart cannot track every person who has been banned from its stores, and its employees are not trained to be on the watch for individuals who have been banned.

IV. <u>BRASUELL'S SECOND CLAIM</u>. Brasuell's second claim is a challenge to his attorneys' representation. He maintains that his attorneys labored under a conflict of interest because his trial attorney, Ryan Norris, simply "handed off [the] case" to Lisa-Marie Norris on appeal. <u>See</u> Document 2 at CM/ECF 5.

Kelley maintains that Brasuell's claim is procedurally barred from federal court review. Rather than enter the morass of the procedural bar issue, the undersigned will simply reach the merits of the claim.

Strickland v. Washington, 466 U.S. 668 (1984), typically governs a challenge to an attorney's representation. The standard articulated in that case requires the petitioner to make a two-part showing, First, he must show that counsel's performance fell below an objective standard of reasonableness. See White v. Dingle, 757 F.3d 750 (8th Cir. 2014). Second, the petitioner must show prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the trial would have been different. See Id.

There are instances, though, in which the prejudice prong of Strickland v. Washington is inapplicable to a challenge to an attorney's representation. A claim that counsel was ineffective because he acted under a conflict of interest is judged under "several different standards depending on the circumstances of the representation." See Henderson v. United States, 2015 WL 667938 (E.D.Mo. 2015). In Henderson v. United States, the district judge observed the following with respect to the different standards:

> … According to the Supreme Court, counsel is ineffective where "the defendant's attorney actively represented conflicting interests." Mickens, 535 U.S. at 166. Prejudice is presumed and reversal is automatic, where the trial court forces defense counsel "to represent codefendants over his timely objection" without determining that no conflict of interest exists. Id. at 167-68 (citing Holloway v. Arkansas, 435 U.S. 475, 488 (1978)). In other words, if an objection is raised regarding joint representation at the trial level, the defendant need only prove an actual conflict of interest and reversal follows automatically upon such a showing. Id. If a defendant does not object to counsel representing a co-defendant, he or she "must demonstrate that 'a conflict of interest actually affected the adequacy of his representation.'" Id. at 168 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980)). A defendant who makes such a showing "need not demonstrate prejudice in order to obtain relief." Cuyler, 446 U.S. at 349-50. (citation omitted).

>   These standards, however, do [not] apply to all conflicts of interest. <u>Noe v. United States</u>, 601 F.3d 784, 790 (8th Cir. 2010) (noting that the Supreme Court has not extended the <u>Cuyler</u> standard that presumes prejudice to conflicts other than those arising from situations in which an attorney represents more than one defendant) (citing <u>Mickens</u>, 535 U.S. at 174-75). Without squarely deciding the issue, the Eighth Circuit has argued that <u>Strickland</u> is the appropriate standard for alleged conflicts involving ethical issues other than multiple or serial representation. <u>Morelos v. United States</u>, 709 F.3d 1246, 1252 (8th Cir. 2013) (citations omitted) ("[W]e have expressly refrained from deciding whether the lowered burden in establishing prejudice applies to actual conflicts of interest which did not arise out of multiple representation."); <u>Caban v. United States</u>, 281 F.3d 778, 783 (8th Cir. 2002) ("We believe there is much to be said in favor of holding that <u>Cuyler's</u> rationale favoring the 'almost per se rule of prejudice' does not apply outside the context of a conflict between codefendants or serial defendants."). <u>See</u> <u>also</u> <u>Mickens</u>, 535 U.S. at 168 (noting that "the language of [<u>Cuyler v.</u>] <u>Sullivan</u> itself does not clearly establish, or indeed even support, such [an] expansive application" of the automatic reversal standard to other types of ethical conflicts). …

<u>See</u> <u>Id</u>.

Given Brasuell's claim, it is likely that the appropriate standard is the <u>Strickland v. Washington</u> standard. It is not necessary to decide that question, though, because Brasuell has not met his burden under any standard.

The record reflects that Ryan Norris entered an appearance as the attorney of record for Brasuell prior to trial. <u>See</u> Document 13, Exhibit 4 at CM/ECF 21. Ryan Norris represented Brasuell through the conclusion of the trial. At some point after the conclusion of the trial, Ryan Norris was allowed to withdraw, and Lisa-Marie Norris was appointed to represent Brasuell. The undersigned assumes for purposes of the Findings and Recommendation that Ryan Norris and Lisa-Marie Norris were married at the time.

Brasuell has failed to show that Ryan Norris and Lisa-Marie Norris actively represented conflicting interests. Specifically, Brasuell has failed to show what interest, save his defense, they were representing or how the interests conflicted. He appears to imply that their martial status gave rise to a conflict, but he has offered nothing to support the implication.

Notwithstanding the foregoing, the undersigned assumes, <u>arguendo</u>, that Ryan Norris and Lisa-Marie Norris' marital status somehow caused them to represent Brasuell less zealously. Brasuell has failed to show, though, that their performance fell below an objective standard of reasonableness. He has failed to identify a defense, a witness, an argument, an objection, or any matter Ryan Norris should have, but did not, present at trial. Brasuell has also failed to identify a ground for reversal that Lisa-Marie Norris did not advance on appeal or why her performance as his appellate attorney was defective.

V. <u>BRASUELL'S THIRD CLAIM</u>. Brasuell's third claim is a challenge to the trial court's admission of evidence. He maintains that the trial court erred when it allowed testimony regarding the four shoplifting incidents subsequent to the December 5, 2013, incident giving rise to the convictions in this case.

Brasuell's claim appears to be built solely upon a violation of state law. It is axiomatic, though, that a violation of state law warrants no federal habeas corpus relief. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991) (federal habeas corpus relief does not lie for errors of state law); <u>Evenstad v. Carlson</u>, 470 F.3d 777 (8th Cir. 2006) (federal courts lack authority to review state courts' interpretation and application of state law).

To the extent Brasuell's claim is built upon a violation of federal law, it warrants no relief for two reasons. First, the claim is not built upon the same legal bases as the claim he raised on appeal. See Interiano v. Dormire, 471 F.3d 854 (8th Cir. 2006) (claim raised in federal habeas corpus petition must rely upon same factual and legal bases as claim raised in state court). The claim at bar is couched in terms of a due process challenge; the claim on appeal was couched in terms of a violation of Arkansas Rule of Evidence 404(b).

Second, notwithstanding the foregoing, Brasuell cannot show that admitting evidence of the four shoplifting incidents subsequent to the December 5, 2013, incident was so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford him the fundamental fairness which is the essence of due process. See Maggitt v. Wyrick, 533 F.2d 383 (8th Cir. 1976). Giving the state Court of Appeals' findings of fact due deference as required by 28 U.S.C. 2254(d), the evidence of the subsequent bad acts was relevant because it showed his "intent, motive, opportunity, knowledge, and plan to shoplift from Wal-Mart." See Brasuell v. State, 472 S.W.3d at 503. In that regard, the appellate court could and did find the following:

> ... [Brasuell] went to Wal-Mart to shoplift and that he knew it was illegal because he had been arrested and charged for the same conduct in December 2013. Also, the similarity between the [four incidents in October and November of 2014] and the December 5, 2013 incident establishes the independently relevant matters of opportunity and plan. In both sets of circumstances, Brasuell entered the same Wal-Mart store, selected items, concealed them either in his pants, his cart, or his bags, did not pay for them, and left the store.

-12-

See Id. It is also worth observing that on two separate occasions, the trial court gave the jury a cautionary instruction regarding the proper application of the four shoplifting incidents subsequent to the December 5, 2013, incident.

VI. BRASUELL'S FOURTH CLAIM. As Brasuell's fourth claim, he alleges the following: "Prior bad acts-character of defendant; did not enter Wal-Mart for [the] purpose of committing [a] crime." See Document 2 at CM/ECF 6. Kelley construes the claim in a two-fold manner: first, as a challenge to the admission of the four shoplifting incidents subsequent to the December 5, 2013, incident; and second, as a challenge to the sufficiency of the evidence supporting Brasuell's conviction of commercial burglary. Kelley's construction of the claim is reasonable, and the Court will construe it likewise.

To the extent Brasuell challenges the admission of the four shoplifting incidents subsequent to the December 5, 2013, incident, the claim warrants no relief. As the undersigned found, giving the state Court of Appeals' findings of fact due deference, the admission of the evidence was not so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford him the fundamental fairness which is the essence of due process.

To the extent Brasuell's claim challenges the sufficiency of the evidence supporting his conviction of commercial burglary, the claim warrants no relief. As the undersigned found, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of commercial burglary beyond a reasonable doubt.

VII. <u>CONCLUSION</u>. On the basis of the foregoing, it is recommended that Brasuell's petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. It is also recommended that a certificate of appealability be denied.

DATED this 22nd day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE